UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MICHAEL A. KANIPES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-161-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 14 & 14-1] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Michael A. Kanipes ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART** the Plaintiff's motion, and **GRANT IN PART AND DENY IN PART** the Commissioner's motion.

**I.     BACKGROUND**

On June 8, 2010, the Plaintiff filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), claiming a period of disability which began July 2,

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

2008, but was later amended to September 6, 2011. [Tr. 22, 180, 190, 214]. After his application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 126]. Following a hearing, the ALJ found the Plaintiff was "not disabled." [Tr. 92-99]. The Appeals Council, however, remanded the case to the ALJ for further evaluation. [Tr. 22, 105-107]. A second hearing was held on May 6, 2014. [Tr. 39-54]. Following this second hearing, the ALJ again found the Plaintiff was "not disabled." [Tr. 22-33]. The Appeals Council denied the Plaintiff's request for review [Tr. 1-7], making the ALJ's second decision the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on April 8, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication. Having considered the medical evidence in the record, the testimony at the hearing, and all other evidence in the record, the Court finds that the medical history of the Plaintiff and the content of the ALJ's Decision are not in dispute, and need not be repeated here.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner and whether the ALJ's findings are supported by substantial evidence. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

In the disability determination, the ALJ found that the Plaintiff has the residual functional capacity ("RFC") to perform light work with the following additional limitations: he must avoid extreme noise and hazards; with his right hand, he can frequently handle, finger, feel, push, and pull; and he cannot climb ladders but can occasionally climb stairs, balance, stoop, kneel, crawl, and crouch. [Tr. 25]. At step four, the ALJ concluded that the Plaintiff could perform past relevant work as an HVAC service technician. [Tr. 32]. In making this finding, the ALJ relied on the Plaintiff's description of the physical requirements of his work. [*Id.*]. Despite finding that the Plaintiff had past relevant work, the ALJ made an alternative finding at step five. [Tr. 32-33]. Using the Medical-Vocational Guidelines, the ALJ found that other work existed in the national

economy that the Plaintiff could perform. [*Id.*].

On appeal, the Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly weigh the medical opinions of record, including opinions from treating physicians Linda Harris, M.D., and William Mark Rice, M.D., and opinions from non-treating, examining physicians E. Brantley Burns, M.D., Clifford Davidson, M.D., and Jeffrey Uzzle, M.D. [Doc. 14-1 at 5-7]. The Plaintiff further contends that the ALJ's step four and step five determinations are not supported by substantial evidence because the ALJ did not elicit any testimony from a vocational expert ("VE") with regard to the effects the Plaintiff's RFC would have on his ability to perform past work or other work in the national economy. [*Id.* at 5]. The Court will address each alleged error in turn.

   1. **Treating Physician Opinions**

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R.§§ 404.1527(c)(2), 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. *Id.* A decision denying benefits "must contain specific reasons for the weight given to the treating

4

source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. App'x 988, 992 (6th Cir. 2007).

      **a.**      **Linda Harris, M.D.**

On June 2, 2010, Dr. Harris, completed a "Physical Capacity Worksheet," wherein she responded to a variety of short answer and multiple-choice questions regarding the Plaintiff's work-related functional limitations. [Tr. 219-20]. Dr. Harris diagnosed the Plaintiff with lumbar herniated disc disease at L3-L4, L5-5, and L5-S1. [Tr. 219]. Dr. Harris opined that the Plaintiff could generally sit less than three hours and stand or walk less than one hour in an eight-hour workday, could lift or carry up to 20 pounds occasionally, could reach above shoulder level occasionally, could never bend, kneel, squat, crawl, or stoop, and has restrictions against unprotected heights, climate, and activity in wet or humid settings. [Tr. 219-20]. In addition, Dr. Harris explained that the Plaintiff is unable to carry out most activities of daily living due to an inability to stand for long periods of time. [Tr. 220].

The record also includes two letters written by Dr. Harris on May 5, 2011. [Tr. 537-38]. The first letter states that the Plaintiff "is disabled and cannot walk for distances greater than 50 feet." [Tr. 537]. The second letter recommends against continued work due to seizures and chronic back pain and opines that the Plaintiff "cannot do any physical work permanently." [*Id.*].

As to the Physical Capacity Worksheet, the ALJ assigned the opinion "little weight because this physician did not discuss any objective medical signs or findings to support this opinion." [Tr.

5

30]. The ALJ also gave "little weight" to both letters, finding that the statements therein opined on issues reserved to the Commissioner. [Tr. 30]. Moreover, the ALJ found that Dr. Harris did not discuss any objective evidence to support her findings. [*Id.*].

The Plaintiff argues that the ALJ did not explain "how or why" Dr. Harris's findings were inconsistent with the objective evidence or other medical signs and findings in the record. [Doc. 14-1 at 6]. The Plaintiff contends that because Dr. Harris is a treating physician, she was not required to explain or discuss her findings in detail in order for her opinion to be considered valid. [*Id.*]. According to the Plaintiff, the ALJ was required to explain why the lack of a discussion in the Physical Capacity Worksheet invalidated her opinion. [*Id.*].[2]

As an initial matter, the Court disagrees with the Plaintiff's suggestion that Dr. Harris need not explain her findings for her decision to stand by virtue of her status as a treating source. An ALJ "cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). Accordingly, an "ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by *detailed* objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001) (internal quotation omitted) (emphasis added).

Nonetheless, the Court finds merit in the Plaintiff's contention that "good reason" was not given because the ALJ did not explain how or why the opinion was inconsistent with the objective medical signs or findings in the record. The ALJ simply notes that the opinion did not include

---

[2] The Plaintiff does not allege any error as to the ALJ's findings regarding the May 5, 2011 letters. The Court agrees with the ALJ that the opinions rendered therein are findings on issues reserved for the Commissioner. *See* 20 C.F.R. 404.1527(d) (opinions on whether a claimant is "disabled" or "unable to work" are not "medical opinions" and are therefore "not [] given any special significance" because whether an individual meets the statutory definition of disability is an issue reserved for the Commissioner's determination).

6

discussion of objective evidence and findings. "[W]hile it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010).

Here, the ALJ makes no effort to identify any particular evidence that is at odds with Dr. Harris's opinion. While the form opinion completed by Dr. Harris did not ask, or include a space, for her to explain her findings, the record does include treatment notes from Dr. Harris which are not discussed by the ALJ. Moreover, the medical evidence the ALJ did discuss indicates that the Plaintiff suffers from a long-standing history of back pain treated by numerous providers who noted evidence of radicular back pain, tenderness, decreased range of motion, positive straight leg raises, as well as complaints of chronic back pain. [Tr. 25-31]. The record also includes numerous imaging studies, the most recent documenting progressed broad shallow left disc protrusion at L3-4 abutting the left L3 nerve root, right greater than left lateral disc bulging at L4-5 with mild to moderate bilateral fact arthrosis, and advanced disc degeneration at L5-S1 with circumferential disc bulge/endplate spur complex. [Tr. 572]. The ALJ does not appear to have looked past the form opinion in determining whether the findings made therein are supported by Dr. Harris's treatment notes or other objective medial signs and findings. Therefore, the Court cannot conclude that the "good reason" requirement has been met.

The Court recognizes that check-box forms, like the Physical Capacity Worksheet completed by Dr. Harris, are often criticized because such form opinions provide functional limitations with no citation to objective medical evidence, examination findings, or other observations made by the treating source that would otherwise support or explain the specific

7

limitations rendered therein. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("Dr. Chapman's checklist opinion did not provide an explanation for his findings; therefore, the ALJ properly discounted it on these grounds."); *Rogers v. Comm'r of Soc. Sec.*, No. 99-5650, 2000 WL 799332 (6th Cir. June 9, 2000) (finding a treating physician's documentation of impairments on a form with checked-off boxes was not entitled to great weight when no further explanation was given). However, the ALJ failed to examine Dr. Harris's treatment records to determine whether the limitations she assessed had any reasonable basis. *See Kepke*, 636 F. App'x at 630 (in upholding the ALJ's rejection of a checklist opinion that did not provide any explanation for the findings made therein, the Court observed that the ALJ discussed the treating psychiatrist's progress notes which undermined the limitations assessed). Accordingly, the Court finds that the ALJ did not provide "good reason" for rejecting Dr. Harris's opinion.

  **b. William Mark Rice, M.D.**

  Dr. Rice completed a "Medical Statement Regarding Illness, Physical Abilities and Limitations" form on September 2, 2011. [Tr. 540-41]. Dr. Rice diagnosed the Plaintiff with lumbar disc disease and described his symptoms as low back pain that radiates down both legs. [Tr. 540]. Recent examination findings include tenderness in the lower back and an inability to bend at the waist past 65 to 70 degrees. [*Id.*]. Dr. Rice explained that he has treated the Plaintiff the past 10 years and each attempt the Plaintiff has made to work has resulted in severe back pain. [*Id.*]. As to functional limitations, Dr. Rice opined that the Plaintiff can stand or sit for 15 minutes at one time, can frequently lift up to 10 pounds, can constantly manipulate his hands, can frequently raise his arm over shoulder level, and can never bend or stoop. [Tr. 540-41]. Dr. Rice did not assess the Plaintiff's ability to balance or occasionally lift although these limitations were included on the form. [Tr. 540]. Dr. Rice concluded that the Plaintiff's pain is "severe." [Tr. 541].

8

The ALJ assigned Dr. Rice's opinion "little weight" for two reasons. [Tr. 30]. The ALJ found that the opinion was incomplete because Dr. Rice did not specify how often the Plaintiff could balance or the amount of weight the Plaintiff could lift occasionally. [Tr. 30-31]. In addition, the ALJ found that Dr. Rice relied too heavily on the Plaintiff's subjective complaints, questioning Dr. Rice's ability to opine that the Plaintiff's pain was "severe" because "pain is subjective to the claimant." [Tr. 31].

The Plaintiff argues that the ALJ failed to explain why Dr. Rice's opinion is invalidated simply because he did not render an opinion on the Plaintiff's ability to balance or lift occasionally. [Doc. 14-1 at 6]. The Plaintiff also maintains that the ALJ's criticism of Dr. Rice's reliance on the Plaintiff's subjective complaints is unfounded. [*Id.*]. In this regard, the Plaintiff submits that the ALJ does not explain this finding and that all medical opinions, to some extent, must necessarily rely on a claimant's statements. [*Id.*]. The Court agrees and finds that neither reason offered by the ALJ amounts to "good reason."

First, the Court finds that the failure to opine of the Plaintiff's ability to balance or lift occasionally is not grounds for rejecting an entire opinion where Dr. Rice assessed other functional limitations. Whether Dr. Rice left these particular findings blank because he did not feel he could opine on the matter, or was non-responsive for other reasons, is not material to the Court. Social Security Ruling 96-5p recognizes that a physician's "medical source statements may actually comprise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one." 1996 WL 374183, at *4 (July 2, 1996). Therefore, the failure to provide a response on the Plaintiff's ability to balance and lift occasionally is not a basis for rejecting the remaining limitations assessed by Dr. Rice.

9

Second, while an ALJ may properly consider the credibility of a claimant in evaluating complaints of pain, *Walters*, 127 F.3d at 531, the ALJ here does not explain why the Plaintiff's complaints of pain were not credible. Moreover, the ALJ does not cite to any objective medical evidence that contradicts the Plaintiff's, or Dr. Rice's, claim of severe pain. To the contrary, in discussing the medical evidence of record, the ALJ observed that Dr. Rice's treatment notes document complaints of back pain that increased with activity and attempts to work. [Tr. 26]. Indeed, Dr. Rice noted that during his most recent examination, the Plaintiff demonstrated back tenderness and a limited ability to bend on examination. As previously explained, *supra* note 7, the ALJ recognized that other treatment providers noted objective examination findings consistent with the Plaintiff's complaints of chronic pain, and imaging studies which demonstrate, among other things, fairly advanced degenerative disc disease at L5-S1 that has produced spinal stenosis and bilateral foraminal stenosis. [Tr. 26-27]. Accordingly, the Court finds the ALJ's contention that Dr. Rice relied too heavily on the Plaintiff's subjective complaints unsubstantiated by the medical evidence or record, as well as the ALJ's own discussion of the evidence. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.").

2. **Non-Treating, Examining Opinions**

    a. **E. Brantley Burns, M.D.**

Dr. Burns treated the Plaintiff in 2008 for a right wrist injury sustained at work. [Tr. 321-29]. In May 2008, Dr. Burns observed that the Plaintiff had very little range of motion loss of his right hand, he exhibited good grip and stability, and was slightly positive for Tinel's sign. [Tr. 324]. An x-ray showed a well-healed fracture. [*Id.*]. Nerve testing also returned normal. [Tr.

322]. Dr. Burns diagnosed right carpal tunnel syndrome. [Tr. 324]. The Plaintiff returned the flowing month with complaints of thumb numbness with wrist swelling. [Tr. 321]. On examination, the Plaintiff had full passive range of motion but limited active motion. [*Id.*]. Dr. Burns opined that the Plaintiff's symptoms "far outweigh his physical findings and they frankly make it somewhat difficult to come up with an accurate diagnosis." [*Id.*]. The Plaintiff was released from Dr. Burns's care with no work restriction. [*Id.*].

In weighing Dr. Burns's opinion, the ALJ assigned the opinion "significant weight," finding Dr. Burns was "uniquely familiar with the Plaintiff's condition and limitations." [Tr. 30]. The Plaintiff argues that it was improper to defer to Dr. Burns's opinion because he only treated the Plaintiff's wrist. [Doc. 14-1 at 5]. The Plaintiff suggests that the ALJ improperly relied on the opinion in assessing other impairments, for which Dr. Burns did not treat, and to support the overall RFC and limitations assessed therein. [*Id.*].

The Court finds no merit in the Plaintiff's contention. The ALJ discussed Dr. Burns's treatment of the Plaintiff's wrist [Tr. 26] and later assigned his specific findings "significant weight" [Tr. 30]. Nothing within the ALJ's decision suggests that the ALJ attributed Dr. Burns's opinion and findings to any other impairment beyond the Plaintiff's right wrist, the only impairment for which treatment was rendered by Dr. Burns. Indeed, the ALJ's reference that Dr. Burns was "uniquely familiar with the Plaintiff's *condition*" further supports the notion that the ALJ relied on Dr. Burns's opinion in assessing the Plaintiff's wrist impairment only.

Therefore, the Court finds that the ALJ properly weighed Dr. Burns's opinion, and the Plaintiff allegation to the contrary is without merit.

### b. Jeffrey Uzzle, M.D., and Clifford Davidson, M.D.

Dr. Uzzle and Dr. Davidson provided one-time consultative examinations and opined on

11

the Plaintiff's physical ability to perform work related activities.

Dr. Uzzle conducted his consultative examination on September 13, 2013. [Tr. 542-44]. Dr. Uzzle opined the following limitations: the Plaintiff could lift or carry up to 10 pounds contentiously, up to 20 pounds frequently, and up to 50 pounds occasionally; he could sit for two hours uninterrupted and six hours total, and he could stand or walk for one hour uninterrupted and stand and walk four hours total; he could continuously use his left hand for activities and right hand for reaching but could only reach, handle, finger, feel, push, or pull with his right hand frequently; he could continuously use his right foot to operate foot controls and frequently use his left foot for same; he could occasionally climb stairs, balance, stoop, kneel, crouch, and crawl but could never climb ladders of scaffolds; and he could continuously be exposed to humidity and wetness, pulmonary irritants, and extreme cold, could frequently be exposed to vibrations, and could never be exposed to unprotected heights, moving mechanical parts, or operation a motor vehicle. [Tr. 547-51].

Dr. Davidson conducted a subsequent consultative examination on April 30, 2014. [Tr. 662-64]. He agreed with the opinions rendered by Drs. Harris, Rice, and Vargas,[3] but disagreed with the assessment completed by Dr. Uzzle. [Tr. 662]. Dr. Davidson opined the following limitations: the Plaintiff could stand for 15 minutes at one time and 60 minutes total, and he could sit for 30 minutes at one times and 60 minutes total; he could lift up to 10 pounds occasionally and up to five pounds frequently; he could never bend or stoop but could occasionally balance; he could frequently use his hands for fine and gross manipulation and raise his arms above shoulder level; he could frequently tolerate heat and cold; he could occasionally operate a motor vehicle,

---

[3] Dr. Vargas opined that spinal surgery would not relieve the Plaintiff's pain and recommended pain management instead. [Tr. 314].

12

tolerate noise exposure, and elevate his legs during a workday; he could never work around dangerous equipment or pulmonary irritants; and he had mild vision loss and moderate hearing loss. [Tr. 663-64].

The ALJ gave "great weight" to Dr. Uzzle's opinion because Dr. Uzzle had recently observed and examined the Plaintiff. [Tr. 31]. However, "less weight" was given to Dr. Uzzle's driving restriction because the restriction related to the Plaintiff's seizures and the Plaintiff admitted to driving. [*Id.*]. As to Dr. Davidson, the ALJ gave the opinion "little weight," finding that Dr. Davidson had only observed and examined the Plaintiff on one occasion. [*Id.*]. In addition, the ALJ found Dr. Davidson's opinion inconsistent with the evidence of record. [*Id.*].

The Plaintiff argues that the reasons given by the ALJ for giving more weight to Dr. Uzzle's opinion than the opinion of Dr. Davidson are inherently inconsistent. [Doc. 14-1 at 6-7]. The Court concurs. The ALJ gave great weight to Dr. Uzzle's opinion because he recently observed and examined the Plaintiff, but Dr. Davidson's examination occurred after Dr. Uzzle had seen the Plaintiff. Therefore, under the ALJ's rationale, Dr. Davidson's opinion would be entitled to greater deference because it was rendered more recently. The ALJ also discounted Dr. Davidson's opinion because it was based on a one-time examination. This reasoning, however, would then undermine Dr. Uzzle's opinion because Dr. Uzzle, like Dr. Davidson, examined the Plaintiff on a single occasion. Furthermore, Dr. Davidson's opinion was discounted because it was inconsistent with the evidence of record. The ALJ, however, does not identify which evidence is directly at odds with Dr. Davidson's findings. Dr. Davidson agreed with the opinions of Dr. Rice and Dr. Harris, whose opinions this Court has found were not properly weighed by the ALJ. For all these reasons, the Court finds that the ALJ did not provide a reasoned basis for crediting Dr. Uzzle's opinion over the more restrictive opinion offered by Dr. Davidson.

## 2. Vocational Expert

In a single sentence, the Plaintiff contends that the ALJ erred at steps four and five by failing to solicit testimony from a vocational expert with regard to whether the Plaintiff has past relevant work or can perform other work in the national economy. [Doc. 14-1 at 5]. The Court observes that generally, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996). Nonetheless, the Court finds that even had the Plaintiff properly developed his argument, the matter would not be ripe for review given that this case is being remanded to the ALJ to reconsider certain opinion evidence, necessitating reconsideration of steps four and five. Upon remand, the ALJ may obtain the opinion of a vocational expert should testimony be appropriate in this case based on the Plaintiff's RFC.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 14**] will be **GRANTED IN PART AND DENIED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 15**] will be **GRANTED IN PART AND DENIED IN PART**. Upon remand, the ALJ is instructed to reevaluate the opinions of Drs. Harris, Rice, Uzzle, and Davidson by providing a specific weight to each opinion and a reasoned explanation, with citation to the record, for the weight assigned.

ORDER ACCORDINGLY.

ENTER:

*Bruce Guyton*
United States Magistrate Judge